# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MICHAEL ANTONIO HARDY      *
\# 310-979
Petitioner      *

v      *      Civil Action No. CCB-14-354

J. PHILIP MORGAN, et al.      *
Respondents

                 ***

## MEMORANDUM

Pending is Michael Antonio Hardy's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Respondents have filed a response, (Answer, ECF No. 9), to which Hardy has replied, (Reply, ECF No. 11).  After consideration of the pleadings, exhibits, and applicable law, the court finds a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2014); Rule 8 of the Rules Governing Section 2254 Cases.  For the reasons stated below, Hardy's petition will be denied.

## BACKGROUND

Hardy, who is representing himself, challenges his 2010 conviction in the Circuit Court for Baltimore County for robbery, second degree assault, and theft (less than $1,000 value).  (Pet. 2, ECF No. 1.)  The following is a summary of the facts of his conviction.

On December 19, 2009, Preonca Patell ("Patell") was working as a cashier at the Subway sandwich shop on 400 York Road in Towson, when a man, whom Patell subsequently identified as Hardy, came in through the front door.  (Answer Ex. 2, July 26, 2010 Trial Tr. 6-8, ECF No. 9-2.)[1]  According to Patell, this man was tall, African American, dressed in all black, wore a hat, and had his hands in his jacket pockets.  (*Id*. at 10, 21-22.)  Patell thought he was pretending to have a weapon in his left pocket, (*id.* at 10), so she was "[k]ind of" frightened, (*id.* at 13).  The man approached her and told her to open the cash register.  (*Id.* at 9.)  When she did, he asked

---

[1] All exhibits were filed by respondents and were docketed at ECF No. 9.  Hardy did not file any exhibits.

her for all the cash, and she gave him all the cash inside.  (*Id.* at 11.)  Patell was unsure of how much money was in the register.[2]  (*Id.* at 11, 21, 29.)  Once the man received the money, he left the store through the front door and walked south on York Road.  (*Id.* at 11-12.)

After initially pressing the panic button to no response, Patell called 911.  (*Id.* at 12.) When the police arrived she told them what had happened and gave a description of the suspect. (*Id.* at 13.)  Patell testified that the police first drove her along York Road where she was shown "a bunch of guys just on the streets," none of whom she could identify.  (*Id.* at 14, 22.)  The police officer dropped her off at the Subway shop, but returned shortly thereafter and told her he had someone who fit the description she had given.  (*Id.* at 14.)  According to Patell, they then drove toward Towsontown Boulevard and Bosley Avenue so that she could identify whether this was the same person who had robbed the Subway shop.  (*Id.* at 14-15.)  At a distance of about ten feet, Patell identified Hardy.  (*Id.* at 15-16.)

Hardy was immediately placed under arrest.  (*Id.* at 55.)  On arrival at the police station, he was searched and $87 was found in his right front pocket.  (*Id.* at 59.)  No weapons were found on him.  (*Id.*)  An officer interviewed Hardy, who, after waiving his *Miranda* rights, admitted that he had committed the robbery because he needed money.  (*Id.* at 64-66, 72-73.)

On July 26, 2010, after a bench trial, Hardy was found guilty on all counts.  (*Id.* at 1-3, 85-86.)  On August 19, 2010, Hardy was sentenced to 25 years of imprisonment without parole as a subsequent offender.  (Answer Ex. 3, Aug. 19, 2010 Sentencing Tr. 1, 34, ECF No. 9-3.)

Hardy filed a timely appeal, arguing that the trial court erred in sentencing him to 25 years of imprisonment without the possibility of parole pursuant to Md. Code, Crim. Law § 14-101.  (Answer Ex. 4, Pet'r's Appeal Br. 2, ECF No. 9-4.)  Finding no error, the Court of Special Appeals affirmed Hardy's conviction in an unreported opinion.  (Answer Ex. 6, Md. Ct. Spec.

---

[2] Patell was also unsure whether she gave the man the money or whether he took it out of the drawer.  (*Id.* at 29.)

App. Op. 2, ECF No. 9-6.)  Judgment was entered on October 19, 2011, and the court's mandate

issued on November 18, 2011.  (*Id.* at 11.)  Hardy did not seek further review in the Court of

Appeals.  (Pet. 3.)

 Hardy filed a petition for post-conviction relief in the Circuit Court for Baltimore County

on February 15, 2012.  (Answer Ex. 7, State Post-Conviction Pet. & Supplements 1-4, ECF No.

9-7.)  He alleged that Patell changed her testimony and gave false testimony with regard to who

took the money out of the cash register and how many times she was in the police car looking for

suspects.  (*Id.* at 1-2.)   He further stated that his claims were not waived due to the

ineffectiveness of his counsel for failing to raise these claims in his direct appeal.  (*Id.* at 3.)  On

May 24, 2012, Hardy filed a supplement to his petition, arguing ineffective assistance of both

trial and appellate counsel.  (*Id.* at 5-6.)   Finally, on July 20, 2012, Hardy filed another

supplement to his petition.  (*Id.* at 7-9.)  In this last supplement, Hardy added the key claim, for

the purposes of the current petition, that the State's Attorney knew Patell had testified falsely

regarding how many times she had been taken to look for suspects and that he did nothing to

correct the false testimony.  (*Id.* at 7.)

 A hearing on the state post-conviction petition was held in the Circuit Court for

Baltimore County on March 5, 2013, during which Hardy withdrew his ineffective assistance of

counsel allegations as well as his factual allegation regarding who took the money out of the cash

register, thus leaving the number of times a police officer drove Patell around in order to locate

and identify a suspect as his only remaining factual allegation.  (Answer Ex. 8, Statement of

Reasons & Order 2-3, ECF No. 9-8.)   Regarding Patell's testimony, Hardy alleged that the

State's Attorney knew Patell gave false testimony and did nothing to correct it or bring it to the

trial court's attention.  (*Id.*)

In a detailed and thorough Statement of Reasons and Order dated March 22, 2013, the Circuit Court addressed Hardy's claims of prosecutorial misconduct (by the State's Attorney) and perjury (by Patell), finding that Hardy had waived both claims by failing to raise them in his direct appeal. (*Id.* at 3-5, 8-9.) Further, the court found that there was no evidence to indicate the State's Attorney knowingly used perjured testimony. (*Id.* at 5-7.) Finally, the Circuit Court found that Patell's allegedly false testimony related to the sufficiency of the evidence, which was not a valid ground for post-conviction relief. (*Id.* at 7-8.) Accordingly, the state post-conviction court denied the original state petition and both supplements thereto. (*Id.* at 9.)

On February 5, 2014,Hardy filed the present petition for writ of habeas corpus, which presents one claim for the court's review: "The State[']s Attorney knew the witness gave a false testimony and [did] nothing to correct it." (Pet. 7.)

### STANDARD OF REVIEW

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### I.  Threshold Considerations

### A.  Exhaustion

Generally, a federal habeas petitioner must first exhaust claims in state court; failure to exhaust a claim requires its dismissal by the federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *Rose v. Lundy*, 455 U.S. 509, 515-19 (1982). This exhaustion requirement is satisfied when a petitioner has fairly presented all claims in state court, or if no state remedies are currently available to the petitioner. *See Gray v. Netherland*,

518 U.S. 152, 161 (1996).  Fair presentation requires the petitioner to present the same claims to all appropriate state courts.  *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Both the operative facts and the controlling legal principles must be presented.  *Picard v. Connor*, 404 U.S. 270, 277 (1971).  This requirement is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

### B.  Procedural Default

"If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim."  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).  When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, such as the conviction of one who is actually innocent.  *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).  "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time."  *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted).

### II.  Analysis Framework

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

5

United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult

to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593

F.3d 372, 378 (4th Cir. 2010).  This is especially true where state courts have "resolved issues

like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)."

*Id*. (citation omitted).

## DISCUSSION

The State argues that Hardy's petition is subject to denial on several grounds, including

that it is factually insufficient, that it does not state a cognizable claim, and that, in any event, it

fails on the merits.  (Answer 11.)  The State quotes at length from the Circuit Court's denial of

Hardy's state post-conviction relief application.  (*See id.* at 11-16.)  The court agrees with the

State that Hardy has procedurally defaulted his present prosecutorial misconduct claim and, even

were it otherwise, that his claim fails on the merits.

### I.  Procedural Default

Hardy has procedurally defaulted his prosecutorial misconduct claim.  As noted, in his

appeal to the Court of Special Appeals, Hardy challenged only the appropriateness of his

sentence.  (Pet. 2.)  And the state post-conviction court concluded that, by failing to include his

prosecutorial misconduct claim in his direct appeal, Hardy waived that allegation under

Maryland law.  (Statement of Reasons & Order 3.)  That court noted that "[a]n alleged error may

only be considered if the petitioner has not waived his right to be heard on that particular

allegation."  (*Id.*)  The court further noted that Maryland's Post Conviction Procedure Act

provided a "rebuttable presumption" that "a petitioner's failure to raise an issue in a previous

proceeding was a knowing and intelligent failure."  (*Id.* at 4 (citing Md. Code., Crim. Proc. § 7-

106(b)).

Although Hardy stated in his initial state post-conviction petition that the errors claimed had

not been waived "because they were the result of ineffective assistance of counsel[,]" (State Post-Conviction Pet. & Supplements 3), he did not provide such a statement of non-waiver in his final petition, which first raised the prosecutorial misconduct claim, (*see id.* at 7; Statement of Reasons & Order 5).  Moreover, the state post-conviction court found that, even if the statement of non-waiver were incorporated, Hardy still would not have overcome the presumption because he neither provided any facts explaining how the allegation related to ineffective assistance of counsel nor illustrated any special circumstances.   (Statement of Reasons & Order 5.) Accordingly, the court found that the allegation was waived and dismissed it.  (*Id.*)

The State argues that "[t]his plain statement of procedural default is reason alone, absent showings by Hardy of cause and prejudice or of actual innocence," to reject Hardy's petition. (Answer 17 (citing *Coleman*, 501 U.S. at 729-57)).  The court agrees.  The state court dismissed Greene's petition on the basis of an independent and adequate state procedural rule.

In his reply, Hardy attempts to show cause for this default by stating that: he filed for post-conviction relief on February 15, 2012, but the petition did not mention an allegation of ineffective assistance of counsel; petitioner filed a supplement to the petition on May 17, 2012, based on ineffective assistance of his trial and appellate attorneys; that the allegation of misconduct on the part of the prosecutor was added later, on July 13, 2012; and the allegations of ineffective assistance of counsel were withdrawn after the hearing commenced and the petitioner was questioned concerning the allegations of the petition as a whole.  (Reply 1.)  For these reasons, Hardy "believes [his] claims have not been defaulted."  (*Id.*)

But it is unclear how the above shows Hardy has not defaulted his prosecutorial misconduct claim.  His reply simply presented a chronology of his petition and supplements and the claims contained in each, of which the state post-conviction court was clearly aware.  This is

not sufficient cause for his default.

Petitioner next states that, even if the claim has been defaulted, he only became aware of the facts of his claim when he received the State's brief, because he did not have any of the trial transcripts. (*Id.*) In Hardy's view, "for this cause the default should be excused." (*Id.*) He further argues that "[i]t would prejudice [him] to bar[] the claim before the facts are heard, and would continue to hinder [his] liberty . . . ." (*Id.*)

These arguments are unpersuasive. Hardy sat through his trial and heard the testimony of Patell and Officer Banks. Thus, he "heard" the "facts" of which he now claims to have been unaware. That he did not possess the trial transcripts does not provide cause for his procedural default of the prosecutorial misconduct claim. The court need not discuss the prejudice prong because petitioner has failed to show cause. *See Breard*, 134 F.3d at 620. And, besides the reference above to hindering his liberty, Hardy has not attempted to make a showing of actual innocence.

Accordingly, Hardy has procedurally defaulted his present claim.

## II. Merits

Even had it not been procedurally defaulted, Hardy's prosecutorial misconduct claim would fail on the merits. Hardy claims "[t]he States [sic] Attorney knew the witness gave false testimony," (Pet. 5), and "[did] nothing to correct it," (*id.* at 7). Hardy provides two facts to support this allegation. First, "[t]he State[']s Attorney had access to the victim when he put the victim on the stand, [and] during that time the victim gave a false testimony." (*Id.* at 6.) Second, "the State[']s Attorney had access to the testifying officer and the police reports." (*Id.* at 7.)

The State argues that these facts are insufficient to state a basis for relief. The court agrees. Hardy not only "fails to provide the substance of the allegedly false testimony," but he

also "fails to substantiate either its falsity or the prosecutor's knowledge of its falsity." (Answer

11.) The state post-conviction court summarized Hardy's claim as follows:

> The specific instance of false testimony that the Petitioner discusses relates to the
> number of times a police officer drove the victim around in an effort to locate and
> identify a suspect.  At trial, the victim testified that a police officer first drove her
> along York Road to locate a suspect, and then later, the officer drove her another
> time to the intersection of Towsontown Boulevard and Bosley Avenue.  It was at
> this intersection that the victim identified the Petitioner as the individual who
> committed the robbery.  Later on in the trial, a police officer testified that he only
> drove the victim to the intersection of Towsontown Boulevard and Bosley
> Avenue.  Because of this conflicting testimony, the Petitioner argues that the
> victim committed perjury, and it was thus the State's Attorney's duty to correct it.

(Statement of Reasons & Order, at 2-3 (footnotes omitted).)  The court found that Hardy had

"failed to present *any* facts in his Petition to establish that the State's Attorney knew that the

victim's testimony was false." (*Id.* at 6 (emphasis in original).)  Moreover, the court found that

Hardy had "not present[ed] any facts to establish that the State's Attorney played a role in getting

the victim to testify falsely." (*Id.*)  Instead, the court found, Hardy had "made the conclusory

statement that the State's Attorney had knowledge that the victim gave false testimony, and this

[wa]s not sufficient for post conviction relief." (*Id.*)  Finally, in response to Hardy's argument

that the State's Attorney knew the testimony was false because he had access to the police report

and to the testifying officer, the court found that "the State's Attorney's testimony illustrate[d]

that he did not have knowledge that the testimony was false[,]" and that no evidence to the

contrary had been produced. (*Id.* at 6-7.)

The court defers to these factual findings. *See* 28 U.S.C. § 2254(e)(1).  Hardy has done

no more here than make the same unsubstantiated allegations he made in state court: the State's

Attorney *must* have known Patell's testimony was false because he had access to both the police

report and the testifying officer.

Moreover, Hardy has not met his burden of showing that the prosecutor engaged in

improper conduct, and that such conduct prejudiced his substantial rights so as to deny him a fair trial. *See United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005) ("When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing (1) that the prosecutor engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." (citation omitted)).  Nor has Hardy shown that he was prejudiced by Patell's testimony.  Whether Patell testified falsely, or the State's Attorney knew such testimony was false, is irrelevant.  The bottom line is that Patell identified Hardy.

The court does not find that the Circuit Court's denial of Hardy's state post-conviction relief petition was "a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Accordingly, Hardy's petition will be denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Hardy has failed to make a substantial showing that he was denied a constitutional right, and the court finds that reasonable jurists would not find the denial of habeas relief in this case debatable.  Accordingly, a certificate of appealability shall not issue.[3]

---

[3] Denial of a certificate of appealability in the district court does not preclude Hardy from requesting one from the court of appeals.

**CONCLUSION**

For the above reasons, the court concludes that Hardy's petition provides no grounds for habeas corpus relief.  A separate order follows denying and dismissing the petition with prejudice and declining to issue a certificate of appealability.


June 11, 2015                                            _____/S/_____
Date                                                     Catherine C. Blake
                                                         United States District Judge